### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SBC TOWER HOLDINGS, LLC

      Plaintiffs,

v.

LARIBA GROUP, LLC, an Illinois company,
RAINA TORRENCE LLC, an Illinois company,     Case No. 1:22-cv-3219

      Defendant.

_____/

### COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff SBC Tower Holdings, LLC, ("SBC" or "Plaintiff"), by and through its attorneys, FAEGRE DRINKER BIDDLE & REATH LLP, for its Complaint against the Defendants Lariba Group, LLC ("LGL"), and Raina Torrence LLC ("RTL," and collectively with LGL, the "Defendants"), states as follows:

1.     This case concerns Defendants' wrongful trespass, obstruction of, and interference with SBC's lawful access easement rights to a communications tower and corresponding breaches of the underlying easement agreement between the parties. Specifically, even though Defendants were on notice of SBC's easement rights (both because they are parties to the easement agreement and by virtue of the easements being publicly recorded), Defendants constructed, or allowed to be constructed, a Dunkin Donuts inside SBC's access easement. At the same time, without SBC's knowledge or consent, Defendants unlawfully purported to execute and *record* a new easement agreement attempting to relocate SBC's access easement using a wholly unworkable route thereby rendering the communications tower inaccessible. SBC's sublessee, American Tower Asset Sub II,

LLC ("American Tower"), which is entitled to use SBC's easements, made repeated efforts to engage Defendants to address these matters and to reinstate SBC's valid easement rights. Defendants have refused to do so and now even refuse to respond at all.

## PARTIES

2.     Plaintiff SBC Tower Holdings, LLC is a Delaware limited liability company with NCWPCS MPL Holdings, LLC as its sole member.

3.     NCWPCS MPL Holdings, LLC is a Delaware limited liability company with the following two members: AT&T Investment & Tower Holdings, LLC and New Cingular Wireless PCS, LLC.

(a)     The first member, AT&T Investment & Tower Holdings, LLC, is a Delaware limited liability company with the following three members: AT&T Capital Services, Inc.; JVI General Partnership; and SBC Portfolio Holdings, Ltd.

(i)     AT&T Capital Services, Inc. is a Delaware corporation with its principal place of business in Texas.

(ii)     JVI General Partnership is a Delaware general partnership with two partners: AT&T Corp., which is a New York corporation with its principal place of business in New Jersey; and AT&T Solutions, Inc., which is a Delaware corporation with its principal place of business in New Jersey.

(iii)     SBC Portfolio Holdings, Ltd. is a Delaware corporation that is wholly owned by AT&T International, LLC, which is a Delaware limited liability company with its principal place of business in Texas. The sole member of AT&T International, LLC is AT&T Corp., a New York corporation with its principal place of business in New Jersey.

(b)     The second member, New Cingular Wireless PCS, LLC is a Delaware limited liability company with AT&T Mobility II LLC, a Delaware limited liability company, as its sole member. AT&T Mobility II LLC has the following three members: BellSouth Mobile Data, Inc.; AT&T Corp.; and AT&T Mobility, LLC.

(i)     BellSouth Mobile Data, Inc. is a Georgia corporation with its principal place of business in Georgia.

(ii)     AT&T Corp. is a New York corporation with its principal place of business in New Jersey.

(iii)     AT&T Mobility, LLC is a Delaware limited liability company with BellSouth Mobile Data, Inc., a Georgia corporation with its principal place of business in Georgia, as its sole member.

4.     Accordingly, SBC Tower Holdings, LLC is a citizen of Delaware, Georgia, New Jersey, New York, and Texas.

5.     Defendant Lariba Group, LLC is an Illinois limited liability company. After reasonable investigation, Plaintiff believes that LGL has a sole member, Azizeh Tawil, who is a resident and citizen of the State of Illinois. Accordingly, LGL is a citizen of the State of Illinois.

6.     Defendant Raina Torrence, LLC is an Illinois limited liability company. After reasonable investigation, Plaintiff believes that RTL has a sole member, Sanjeev Khatau, who is a resident and citizen of the State of Illinois. Accordingly, RTL is a citizen of the State of Illinois.

**JURISDICTION AND VENUE**

7.     This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and because Plaintiff seeks to recover damages and injunctive relief in excess of $75,000. As set

forth above, SBC is a citizen of Delaware, Georgia, New Jersey, New York, and Texas while Defendants are citizens of Illinois.

8.      SBC's injuries exceed the jurisdictional minimum of $75,000, exclusive of fees and costs, which amount will be determined at trial.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims herein occurred in this judicial district and the property that is subject to the action is situated in this judicial district.

## FACTS

10.      SBC owns a telecommunications tower located at 10347 S. Torrence Avenue, Chicago, Illinois 60617 that it subleases to American Tower (the "Tower"). Upon information and belief, RTL owns and operates a Dunkin Donuts restaurant located at 10351 S. Torrence Avenue, Chicago, Illinois 60617, and LGL owns and operates a Subway restaurant at 10327 S. Torrence Avenue, Chicago, Illinois 60617.[1]

11.      On or around March 17, 2010, SBC paid substantial valuable consideration for an easement agreement (the "Easement Agreement") with Azizeh and Tawfik Tawil (the "Tawils" or "Grantors"). A true and correct copy of the Easement Agreement is attached as Exhibit A.

12.      Under the Easement Agreement, the Tawils granted SBC, along with its "customers, lessees, sublessees, licensees, agents, successors and assigns," two separate but related easements: (1) a "perpetual, exclusive easement," which provides rights to the portion of the property for "installing, constructing, maintaining, operating, modifying, repairing and replacing improvements

---

[1] Upon information and belief, the Tawils, typically through LGL, purchased title to multiple parcels on South Torrence Avenue in Chicago over the course of several years. The parcels were then split, both by LGL and RTL, into different PINs. The current PIN for the parcel wherein the Dunkin Donuts is located is 26-07-303-024-0000. The current PIN for the parcel wherein the Subway is located is 26-07-303-026-0000.

and equipment," for the Tower (the "Exclusive Easement"); and, for access to the Tower, (2) a "perpetual, non-exclusive easement" for the purpose of "ingress and egress from and to the Exclusive Easement, as well as the construction, installation, operation and maintenance of overhead and underground electric, water, gas, sewer, telephone, data transmission and other utility facilities . . . with the right to reconstruct, improve, add to, enlarge, change and remove such facilities, and to connect the same to utility lines located in a publicly dedicated right of way." (the "Access and Utility Easement" and collectively with Exclusive Easement, the "Easements"). *See* Ex. A ¶¶ 1, 6.

13.     Under the Exclusive Easement, SBC, and its "designated customers, lessees, sublessees, agents, successor and assigns," have "the exclusive right to use, and . . . free access to, the Easements seven (7) days a week, twenty-four (24) hours a day." *Id.* ¶ 6(a).

14.     The Easement Agreement further provided that the Tawils, as Grantors, "shall not have the right to use the Exclusive Easement for any reason and shall not disturb [SBC's] right to use the Exclusive Easement in any manner." *Id.* In fact, under the Exclusive Easement, SBC has the "right to prohibit anyone, including Grantor, from entry into such Exclusive Easement." *Id.*

15.     With regard to the Access and Utility Easement, the Tawils, as Grantors under the Easement Agreement, cannot "in any manner prevent access to, and use of, the Access and Utility Easement by [SBC] or its customers, lessees, sublessees, licensees, agents, successors and assigns;" nor can the Tawils "utilize the Access and Utility Easement in any manner that interferes with [SBC's] . . . use of such area." *Id.* ¶ 6(b).

16.     The Tawils, as Grantors under the Easement Agreement, warranted that SBC shall "peaceably and quietly hold and enjoy the Easements for the term of this Agreement without any

hindrance, molestation or ejection by any party whomsoever." *Id.* ¶ 9(a). As discussed further herein, the term is perpetual.

17.     Moreover, the Tawils, as Grantors under the Easement Agreement, agreed that they would "not grant, create, or suffer any claim, lien, encumbrance, easement, restriction or other charge or exception to title to the Easements that would adversely affect [SBC's] use of the Easements." *Id.* ¶ 9(d).

18.     The Tawils, as Grantors under the Easement Agreement, also agreed to "not improve or grant any other easement, ground lease, lease, license, sale or other similar interest of or upon the Premises if such improvement or interest would interfere with [SBC's] use of the Easements." *Id.* ¶10. In the event of a breach of this section, SBC "shall have the express right to seek an injunction to prevent any of the activity [sic] prohibited by this Section 10." *Id.*

19.     The Tawils, as Grantors under the Easement Agreement, also agreed to "indemnify, defend and hold harmless [SBC] and its officers, directors, shareholders, agents and attorneys for, from and against all damages asserted against or incurred by any of them by reason of or resulting from a breach by Grantor of any representation, warranty, or covenant of Grantor contained herein or in any agreement executed in connection herewith." *Id.* ¶ 9(f).

20.     In the event of any "legal action or proceeding" between Grantors and SBC arising from the Easement Agreement, the "unsuccessful party to such action or proceeding shall pay to the prevailing party all costs and expenses, including reasonable attorney's fees and disbursements incurred by such prevailing party in such action or proceeding and in any appeal in connection therewith." *Id.* ¶ 21.

21.     The Easements are perpetual in nature and only SBC may, upon prior written notice, unilaterally terminate the Easements. *Id.* ¶ 4.

22.     The Easement Agreement was recorded with the Cook County Recorder of Deeds on June 6, 2010. *Id.* at 1.

23.     Other than SBC's election to terminate, the Easement Agreement "may not be modified, amended, altered or changed in any respect except by written agreement and signed by each of the parties [to the Easement Agreement]." *Id.* ¶ 22.

24.     On January 2, 2014, the Tawils sold a portion of their property to LGL (of which Tawfik Tawil is a member) through a quit claim deed. Pursuant to that sale, the Tawils conveyed "[a]ll interest" in the property known as 10323-10347 S. Torrence Avenue, Chicago, Illinois 60617 (the "Quit Claim Deed"). A true and correct copy of the Quit Claim Deed is attached as Exhibit B.

25.     Two years later, on December 5, 2016, LGL sold 10335-51 S. Torrence Avenue, Chicago, Illinois 60617 to RTL via a warranty deed, which property included the servient estate encumbered by the Access and Utility Easement (the "Warranty Deed"). A true and accurate copy of the Warranty Deed is attached as Exhibit C.

26.     The Tawils did not formally assign the Easement Agreement to LGL, and there was no formal assignment to RTL either.

27.     Nevertheless, and even though the Quit Claim Deed and the Warranty Deed did not refer to the Easement Agreement, LGL and RTL both took the property subject to the publicly recorded Easement Agreement under Illinois law.

28.     The Easement Agreement expressly binds "the parties hereto and their respective heirs, personal representatives, lessees, successors, and assigns." Ex. A ¶ 3.

29.     Moreover, by its terms the rights and obligations arising from the Easement Agreement also run with the land: "All of the various rights, obligations, restrictions and easements created in [the Easement Agreement] . . . run with the affected lands and . . . inure to the benefit of

and . . . bind[] . . . all future owners and lessees of the affected lands and all persons claiming under them." *Id.* ¶ 3.

30.     Furthermore, the Warranty Deed pursuant to which the property was conveyed to RTL specifically stated that RTL took the property "[s]ubject to: covenants, conditions, and restrictions of record, private, public and utility easements . . . ." Ex. C.

31.     Accordingly, the subsequent grantees of the servient estate (both LGL and RTL) became bound by the obligations under the Easement Agreement. *See Flower v. Valentine*, 135 Ill. App. 3d 1034, 1039 (1st Dist. 1985). Indeed, they stepped into the shoes as Grantor under the Easement.

32.     Unbeknownst to SBC at the time, LGL and RTL entered into a separate easement agreement on March 9, 2017 wherein the two Defendants purported to terminate the valid Easement Agreement with SBC and create a *new* easement to their benefit (the "Purported Permanent Easement Agreement"). The Purported Permanent Easement Agreement is attached as Exhibit D.

33.     However, pursuant to the terms of the Easement Agreement, no one can terminate or modify the Easement Agreement without SBC's written consent, which LGL and RTL did not have. *See* Ex. A, ¶ 22.

34.     Moreover Defendants, as successors-in-interests to the Easement Agreement, are bound by the covenant not to "grant, create, or suffer any claim, lien, encumbrance, *easement*, restriction or other charge or exception to title to the Easements that would adversely affect [SBC's] use of the Easements." *Id.* ¶ 9(d) (emphasis added).

35.     Upon information and belief, in the Spring of 2017 RTL began constructing a Dunkin Donuts on what had been a vacant parking lot between South Torrence Avenue and the Tower—the same location as SBC's Access and Utility Easement, which SBC, and its customers, lessees,

sublessees, licensees, agents, successors and assigns, including American Tower as SBC's sublessee, utilized to access the Tower.

36.     Under the Easement Agreement, Defendants could not "in any manner prevent access to, and use of, the Access and Utility Easement by [SBC] or its customers, lessees, sublessees, licensees, agents, successors and assigns." Ex. A, ¶ 6.

37.     RTL's placement of the Dunkin Donuts (together with the parking lot, drive thru window, landscaping, curbs and/or fencing)—directly in the path of the Access and Utility Easement—prevented access, and interfered with, SBC's, and its customers', lessees', sublessees', licensees', agents', successors' and assigns', use of the Access and Utility Easement and interfered with SBC's rights as the Easement holder with the dominant estate over the subject property.

38.     RTL's placement of the Dunkin Donuts also disturbed SBC's right to use its Exclusive Easement by preventing access to the Exclusive Easement. An aerial photograph of the property is attached as Exhibit E.

39.     In the aerial photograph, SBC's Exclusive Easement (where the fenced-in Tower and attendant equipment are located) is contained in the squared black line. *See* Ex. E. SBC's valid Access and Utility Easement is indicated by the red line. As set forth in Paragraph 35 above, at the time the Easement Agreement was entered, the Access and Utility Easement ran through a vacant lot, with nothing obstructing its path. However, the Dunkin Donuts was then built (as indicated by the "DNKN'" logo) along with a parking lot, drive thru window, landscaping, curbs and/or fencing, which now obstruct the Access and Utility Easement.

40.     Preventing SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, including American Tower, from using both the Access and Utility Easement and

unreasonably interfering and disturbing their use of SBC's Exclusive Easement constitute breaches of the Easement Agreement. *See* Ex. A ¶ 6(a-b).

41.     Moreover, the placement of the Dunkin Donuts has disturbed, and interfered with, SBC's quiet enjoyment of its dominant estate pursuant to its right as the Easement holder.

42.     SBC, through its sublessee American Tower, attempted to regain access to the Tower and full use of its dominant estate by giving notice to Sanjeev Khatau, a manager for RTL, of Defendants' wrongful obstruction through correspondence dated May 11, 2017, June 8, 2017, August 20, 2018, May 23, 2019, and September 30, 2021. These letters are attached as Group Exhibit F.

43.     SBC, through its sublessee American Tower, also had numerous phone conversations with Defendants and their agents regarding Defendants' unreasonable interference with SBC's Easements and Defendants' breaches of the Easement Agreement. Defendants have repeatedly refused to comply with the Easement Agreement and remain in breach. To date the parties have not been able to reach a resolution.

44.     The location of the proposed new access easement in the Purported Permanent Easement Agreement is completely unsuitable for SBC's use, and the use of its customers, lessees, sublessees, licensees, agents, successors and assigns.

45.     Specifically, as indicated by the yellow line in Exhibit E, the unlawful easement in the Purported Permanent Easement Agreement, that Defendants have offered to now provide access to the Tower, runs through fencing, trees, along railroad tracks, and through an area regularly occupied by transient and homeless individuals. Thus, the new easement in the Purported Permanent Easement Agreement lacks an adequate roadway to access the Tower, and the location of it creates

safety concerns for SBC's, and its customers', lessees', sublessees', licensees', agents', successors' and assigns', employees, customers, and contractors. *See* Ex. E.

46.     Because Defendants have blocked SBC's, and its customers', lessees', sublessees', licensees', agents', successors' and assigns', use of the Access and Utility Easement and interfered with SBC's rights as an easement holder of the dominant estate, they have been forced to access the Tower through a different route based on a temporary agreement with a neighboring landowner. This is not an adequate or permanent solution for SBC moving forward. Nor should SBC, or its customers, lessees, sublessees, licensees, agents, successors and assigns, be required to find alternatives when SBC has lawful rights pursuant to the Easements.

47.     Defendants are liable to SBC for all of its costs incurred as a result of Defendants' wrongful obstruction of SBC's Easements, and as a result of Defendants' unlawful efforts to permanently terminate the Easement Agreement and SBC's specific easement rights by executing and then recording the Purported Permanent Easement Agreement. Defendants are also liable for the reduction in value of SBC's Easements.

48.     Defendants are required to "indemnify . . . [SBC] . . . from, and against all damages . . . incurred by [SBC] by reason of or resulting from a breach by [Defendants] of any representation, warranty or covenant of [Defendants] contained herein or in any agreement executed in connection herewith." *See* Ex. A ¶ 9(f).

49.     By executing the Purported Permanent Easement Agreement between RTL and LGL, both Defendants have breached the Easement Agreement.

<u>COUNT I:</u>
**BREACH OF THE EASEMENT AGREEMENT**

50.     SBC incorporates Paragraphs 1 through 49 as if fully set forth and realleged herein.

51. The Easement Agreement is a valid and enforceable contract supported by adequate consideration.

52. SBC has fully performed its obligations under the Easement Agreement and satisfied all conditions precedent to bringing this suit.

53. The Easement Agreement runs with the land and binds Defendants as the Tawils' successors.

54. Defendants both took possession of the property with constructive notice of the Easement Agreement because it is a publicly recorded document.

55. Moreover, Azizeh Tawil, one of the original Grantors under the Easement Agreement, is also the sole member of LRL, and therefore has actual notice of the Easement Agreement.

56. RTL possessed the property where SBC's Access and Utility Easement was located at the time the Purported Permanent Easement Agreement was entered and the Dunkin Donuts was constructed.

57. Defendants are bound by the terms of the Easement Agreement.

58. Defendants have breached, and continue to breach, their obligations under the Easement Agreement, as follows:

(a) Defendants breached their warranty that SBC shall "peaceably and quietly hold and enjoy the Easements for the term of this Agreement without any hindrance, molestation or ejection by any party whomsoever." Ex. A ¶ 9(a). As discussed further herein, the term of the Easements is perpetual.

(b)     Defendants breached their agreement to "not grant, create, or suffer any claim lien, encumbrance, easement, restriction or other charge or exception to title to the Easements that would adversely affect [SBC's] use of the Easements." *Id.* ¶ 9(d).

(c)     Defendants breached their agreement to "not improve or grant any other easement, ground lease, lease, license, sale or other similar interest of or upon the Premises if such improvement or interest would interfere with [SBC's] use of the Easements." *Id.* ¶ 10.

(d)     Defendants breached their agreement to "indemnify, defend and hold harmless [SBC] and its officers, directors, shareholders, agents and attorneys for, from and against all damages asserted against or incurred by any of them by reason of or resulting from a breach by Grantor of any representation, warranty, or covenant of Grantor contained herein or in any agreement executed in connection herewith." *Id.* ¶ 9(f).

(e)     Defendants breached their agreement by unilaterally attempting to terminate the Easement Agreement even though they agreed that the Easements are perpetual in nature and that only SBC may, upon prior written notice, unilaterally terminate the Easements. *See Id.* ¶ 4.

(f)     Defendants breached their agreement by unilaterally attempting to terminate the Easement Agreement even though they agreed that absent SBC's unilateral decision to terminate, the Easement Agreement "may not be modified, amended, altered or changed in any respect except by written agreement and signed by each of the parties [to the Easement Agreement]." *Id.* ¶ 22.

(g)     Defendants breached the Easement Agreement by constructing, or permitting the construction of, a Dunkin Donuts in the path of SBC's Access and Utility Easement;

(h)     Defendants breached the Easement Agreement by unreasonably interfering with SBC's, and its customers', lessees', sublessees', licensees', agents', successors' and assigns', use of the Access and Utility Easement and trespassing upon SBC's dominant estate;

(i)     Defendants breached the Easement Agreement by disturbing SBC's, and its customers', lessees', sublessees', licensees', agents', successors' and assigns', use and quiet enjoyment of the Exclusive Easement by preventing them from accessing the Exclusive Easement and Tower; and

(j)     Defendants breached the Easement Agreement by unlawfully encumbering the Easements by executing, and then recording, the Purported Permanent Easement Agreement.

59.     Prior to filing this litigation, SBC, through its sublessee American Tower, complied with the notice requirements of the Easement Agreement by sending Defendants letters on June 8, 2017, August 20, 2018, May 23, 2019, and September 30, 2021, but Defendants have failed to cure their breaches. *See* Group Ex. F.

60.     Defendants' continued breach of the Easement Agreement has damaged SBC by denying SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, the full use and enjoyment of SBC's Easements in violation of the Easement Agreement and in obstruction of their access. As a result of Defendants' unlawful actions, SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, have been forced to: 1) use an unsuitable alternate route to access the Tower; 2) make alternate arrangements to access the Tower; 3) delay and compromise service and maintenance on the Tower (which impacts cellular communications service in the area); and 4) otherwise suffer losses to SBC's goodwill and business relationships.

61.    SBC is entitled to collect from Defendants "all costs and expenses, including reasonable attorney's fees and disbursements incurred" in bringing this action to enforce its rights under the Easement Agreement.  Ex. A ¶ 21.

62.    Contrary to their obligations under the Easement Agreement, in constructing, or permitting to be constructed, the Dunkin Donuts in the path of SBC's Access and Utility Easement, and attempting to reroute Plaintiff's access route by entering the Purported Permanent Easement Agreement, Defendants have violated their obligation to "not improve or grant any other easement, ground lease, lease, license, sale or other similar interest of or upon the Premises if such improvement or interest would interfere with [SBC's] use of the Easements." *Id*. ¶ 10. As a result, SBC "shall have the express right to seek an injunction to prevent any of the activity [sic] prohibited by this Section 10." *Id*.

63.    An order permanently enjoining Defendants' unlawful interference with SBC's Easements and requiring Defendants to fully restore SBC's Access and Utility Easement is warranted under these circumstances. No adequate legal remedy exists to address Defendants' breach of the Easement Agreement.  SBC's Easements are irreplaceable and unique and money damages will not suffice to make SBC whole. Consequently, an injunction prohibiting any further wrongful conduct with regard to SBC's Easements, and requiring Defendants to remove any obstructions wrongfully disturbing and/or interfering with them, is wholly warranted.

WHEREFORE, SBC respectfully prays for this Court to find in its favor and against Defendants on Count I of the Complaint and enter an order:

(a)    Permanently enjoining them from further interfering and/or disturbing SBC', and its customers', lessees', sublessees', licensees', agents', successors' and assigns', use and enjoyment of SBC's Easements;

15

(b)     Requiring them to remove any obstructions on the Easements and fully restore the Easements to the condition they were in prior to the Defendants' modifications;

(c)     Awarding damages for the past interference Defendants' wrongful actions have caused SBC in an amount to be proven at trial;

(d)     Declaring the Purported Permanent Easement Agreement void *ab initio*;

(e)     Requiring Defendants to indemnify SBC by awarding SBC its attorney's fees, court costs, all costs incurred by SBC resulting from Defendants' unlawful actions, and interest; and

(f)     Awarding such other relief that the Court deems necessary and proper.

## COUNT II: DECLARATORY JUDGMENT/QUIET TITLE

64.     SBC incorporates and realleges paragraphs 1 through 49 as if fully set forth herein.

65.     An actual controversy exists between the parties regarding the validity and enforceability of both the Easement Agreement and the Purported Permanent Easement Agreement. Defendants contend that the Purported Permanent Easement Agreement is a valid and enforceable agreement that replaced the Easement Agreement. SBC alleges that the Easement Agreement barred Defendants from entering the Purported Permanent Easement Agreement in the first instance.

66.     As a result of Defendants' unlawful actions in ignoring their obligations under the Easement Agreement, and the Easements themselves, and in entering the Purported Permanent Easement Agreement without SBC's consent, SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, have been forced to: 1) use an unsuitable alternate route to access the Tower; 2) make alternate arrangements to access the Tower; 3) delay and compromise service

and maintenance on the Tower (which impacts cellular communications service in the area); and 4) otherwise suffer losses to SBC's goodwill and business relationships.

67.     In sum, by entering and recording the Purported Permanent Easement Agreement, Defendants' actions have served to wrongfully cloud SBC's title to its dominant valid easement rights afforded it under the Easement Agreement.

68.     This Court has the power to "make binding declarations of rights, having the force of final judgments . . . of the construction . . . of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701.

69.     Accordingly, this Court may construe the parties' rights under the Easement Agreement and the Purported Permanent Easement Agreement and declare whether they are valid and enforceable agreements.

70.     SBC requests that this Court declare that the Easement Agreement is valid and enforceable and that the Purported Permanent Easement Agreement is not valid or enforceable.

71.     SBC also requests that this Court quiet title to SBC's valid easement rights, declare that SBC's rights under the Easement Agreement dominate over Defendants' attempted use of them, declare that the Defendants may not unreasonably interfere with or disturb SBC's, or its customers', lessees', sublessees', licensees', agents', successors' and assigns', use and enjoyment of SBC's Easements, declare the Purported Permanent Easement Agreement null and void, and require Defendants to correct the public record accordingly.

WHEREFORE, SBC respectfully prays for this Court to find in its favor and against Defendants on Count II of the Complaint and enter an order:

   a)  Declaring the Purported Permanent Easement Agreement void *ab initio*;

b) Declaring the Easement Agreement, is a valid, enforceable agreement, and obligating Defendants to abide by its terms;

c) Declaring SBC's rights under the Easement Agreement as supreme and that Defendants may not unreasonably interfere with SBC's, or its customers', lessees', sublessees', licensees', agents', successors' and assigns', use and enjoyment of SBC's Easements;

d) Requiring Defendants to correct the public record, and

e) Awarding SBC its attorney's fees, court costs, all costs incurred by SBC resulting from Defendants' unlawful actions, and interest; and

f) Such other relief the Court deems necessary and proper.

## COUNT III: SPECIFIC PERFORMANCE

72. SBC incorporates and realleges paragraphs 1 through 49 as if fully set forth herein.

73. The Easement Agreement is definite and certain in its terms, mutual in its obligation, free from unfairness and, in all other ways, valid and binding upon the parties thereto.

74. SBC has fully performed its obligations under the Easement Agreement and satisfied all conditions precedent to bringing this suit.

75. Defendants are bound by the terms of the Easement Agreement.

76. The Easement Agreement runs with the land and binds Defendants as the Tawils' successors.

77. Defendants both took possession of the property with constructive notice of the Easement Agreement because it is a publicly recorded document.

78.     Moreover, Azizeh Tawil, one of the original Grantors under the Easement Agreement, is also the sole member of LRL, and therefore has actual notice of the Easement Agreement.

79.     Defendants materially interfered with SBC's Easements. Specifically, as a result of Defendants' unlawful actions, SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, have been forced to: 1) use an unsuitable alternate route to access the Tower; 2) make alternate arrangements to access the Tower; 3) delay and compromise service and maintenance on the Tower (which impacts cellular communications service in the area); and 4) otherwise suffer losses to SBC's goodwill and business relationships.

80.     The Easement Agreement affects an interest in real property.

81.     No adequate legal remedy exists to address Defendants' breach of the Easement Agreement.  SBC's Easements are irreplaceable and unique and money damages will not suffice to make SBC whole.

WHEREFORE, SBC respectfully prays for this Court to find in its favor and against Defendants on Count III of the Complaint and enter an order:

a)  Requiring Defendants to specifically perform the terms of the Easement Agreement;

b)  Requiring Defendants to remove any obstructions from the Easements and to fully restore the Easements;

c)  Declaring the Purported Permanent Easement Agreement void *ab initio*;

d)  Declaring the Easement Agreement is a valid, enforceable agreement;

e)  Declaring SBC's rights under the Easement Agreement as supreme and that neither Defendant may unreasonably interfere with SBC's, or its customers', lessees',

sublessees', licensees', agents', successors' and assigns', use and enjoyment of the Easements;

f)  Requiring Defendants to correct the public record;

g)  Enjoining Defendants from engaging in further obstruction of SBC's Easements;

h)  Requiring Defendants to indemnify SBC by awarding SBC its attorney's fees, court costs, all costs incurred by SBC resulting from Defendants' unlawful actions, and interest; and

i)  Such other relief the Court deems necessary and proper.

## COUNT IV: TRESPASS

82.    SBC incorporates and realleges paragraphs 1 through 49 as if fully set forth herein.

83.    A trespass to an easement occurs when "there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement." *Chicago Title Land Trust Co. v. JS II, LLC*, 977 N.E. 2d 198, 218 (Ill. App. Ct. 2012).

84.    Defendants intentionally constructed, or permitted the construction of, the Dunkin Donuts in the path of SBC's Access and Utility Easement.

85.    In so doing, Defendants materially interfered with SBC's Easements. Specifically, as a result of Defendants' unlawful actions, SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, have been forced to: 1) use an unsuitable alternate route to access the Tower; 2) make alternate arrangements to access the Tower; 3) delay and compromise service and maintenance on the Tower (which impacts cellular communications service in the area); and 4) otherwise suffer losses to SBC's goodwill and business relationships.

86.    Accordingly, Defendants have wrongfully trespassed upon SBC's Easements.

WHEREFORE, SBC respectfully prays for this Court to find in its favor and against Defendants on Count V of the Complaint and enter an order:

a) Finding in favor of SBC and against Defendants on SBC's trespass claim;

b) Awarding damages, in an amount to be determined at trial, for Defendants' wrongful trespass;

c) Requiring Defendants to remove any obstructions from the Easements and to fully restore the Easements;

d) Enjoining Defendants from engaging in further trespass of SBC's Easements;

e) Awarding SBC its attorney's fees, court costs, all costs incurred by SBC resulting from Defendants' unlawful actions, and interest; and

f) Such other relief the Court deems necessary and proper.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT

87.     SBC incorporates and realleges paragraphs 1 through 49 as if fully set forth herein.

88.     The Easement Agreement is a valid and enforceable contract.

89.     As a recorded instrument, Defendants had constructive notice of the Easement Agreement.

90.     To the extent that this Court finds that either LGL or RTL is not a party to the Easement Agreement such that it is determined that it did not directly breach the Easement Agreement, then as a non-party with constructive notice of the Easement Agreement and its terms, that non-party has tortiously interfered with the Easement Agreement by inducing a breach of it.

91.     Specifically, if this Court finds that RTL is not a party to the Easement Agreement, then RTL intentionally and without justification induced LGL to breach the Easement Agreement by

purporting to terminate the Easement Agreement without SBC's consent and by executing the Purported Easement Agreement.

92.     Alternatively, if this Court finds that LGL is not a party to the Easement Agreement, then LGL intentionally and without justification induced RTL to breach the Easement Agreement to breach the Easement Agreement by purporting to terminate the Easement Agreement without SBC's consent and by executing the Purported Easement Agreement.

93.     To the extent that RTL is determined to not be a party to the Easement Agreement, RTL's tortious interference with the Easement Agreement has injured SBC by denying SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, the full use and enjoyment of SBC's Easements in violation of the Easement Agreement and by obstructing their access. As a result of Defendants' unlawful actions, SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, have been forced to: 1) use an unsuitable alternate route to access the Tower; 2) make alternate arrangements to access the Tower; 3) delay and compromise service and maintenance on the Tower (which impacts cellular communications service in the area); and 4) otherwise suffer losses to SBC's goodwill and business relationships.

94.     On the other hand, to the extent that LGL is determined to not be a party to the Easement Agreement, LGL's tortious interference with the Easement Agreement has injured SBC by denying SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, the full use and enjoyment of SBC's Easements in violation of the Easement Agreement and by obstructing their access. As a result of Defendants' unlawful actions, SBC, and its customers, lessees, sublessees, licensees, agents, successors and assigns, have been forced to: 1) use an unsuitable alternate route to access the Tower; 2) make alternate arrangements to access the Tower; 3) delay and compromise service and maintenance on the Tower (which impacts cellular

22

communications service in the area); and 4) otherwise suffer losses to SBC's goodwill and business relationships.

WHEREFORE, SBC respectfully prays for this Court to find in its favor and against either Defendant, to the extent one of them is deemed to be a non-party to the Easement Agreement, on Count V of the Complaint and enter an order:

a) Enjoining further interference with the Easement Agreement;

b) Declaring the Purported Permanent Easement Agreement void *ab initio*;

c) Declaring the Easement Agreement is a valid, enforceable agreement;

d) Declaring SBC's rights under the Easement Agreement as supreme and that neither Defendant may unreasonably interfere with SBC's, , and its customers', lessees', sublessees', licensees', agents', successors' and assigns', use and enjoyment of the Easements;

e) Requiring Defendants to correct the public record,

f) Compensatory Damages, including but not limited to SBC's loss of the benefits of the Easement Agreement, out-of-pocket damages, lost profits, loss of potential income, and harm to reputation;

g) Awarding SBC its attorney's fees, court costs, all costs incurred by SBC resulting from Defendants' unlawful actions, and interest;

h) Punitive damages; and

i) Such other relief the Court deems necessary and proper.

Respectfully submitted this June 21, 2022

/s/ Colby Anne Kingsbury
Colby Anne Kingsbury
Ehren M. Fournier
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606-5707
(312) 212-6573
colby.kingsbury@faegredrinker.com
ehren.fournier@faegredrinker.com

Attorneys for SBC Tower Holdings, LLC