UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SBC TOWER HOLDINGS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LARIBA GROUP, LLC, and RAINA ) <br> TORRENCE LLC, ) <br> ) <br> Defendants. ) | No. 1:22-CV-03219 <br><br> Judge Edmond E. Chang |

**ORDER**

SBC Tower Holdings, LLC brings this suit against Lariba Group, LLC, and Raina Torrence LLC for the alleged wrongful trespass and interference with SBC's easement rights on a property and for breaches of an underlying easement agreement amongst the parties.[1] Raina moves to dismiss the claims for failure to adequately state a claim, Fed. R. Civ. P. 12(b)(6), and alternatively moves for a more definite statement, Fed. R. Civ. P. 12(e). R. 18, Mot.[2] For the reasons discussed in this Order, Raina's motion is denied in full.

---

[1]The Court has subject matter jurisdiction over this case based on diversity jurisdiction. 28 U.S.C. § 1332. SBC is an LLC, and its members (after tracing through additional LLCs and a partnership) are citizens of Delaware, Georgia, New Jersey, New York, and Texas. R. 1, Compl. ¶¶ 2–4. Raina is an LLC with two members, and both members are citizens of Illinois. R. 52. Lariba Group is an LLC, with the sole member at the time of the complaint's filing domiciled in Israel. *See* R. 50, para. 5, R. 67, R. 71.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). SBC owns a telecommunications tower at 10347 South Torrence Avenue in Chicago, Illinois. R. 1, Compl. ¶ 10. In March 2010, SBC entered into an easement agreement (for convenience's sake, referred to as the 2010 Agreement in this order) with Azizeh Tawil and Tawfik Tawil (they were designated as the "Grantors" in the agreement). Compl. ¶ 11; R.1-1, 2010 Agreement.[3] The Tawils are husband and wife. 2010 Agreement at 1. Under that agreement, SBC obtained two separate but related easements (the contract labelled the two as the "Easements"), including: (1) a "perpetual, exclusive easement," with rights to the portion of the property for "installing, constructing, maintaining, operating … [the tower]" and accessing the tower (the Exclusive Easement); and (2) a "perpetual, non-exclusive easement" for "ingress and egress from and to the Exclusive Easement" and for "the construction, installation, operation and maintenance of overhead and underground electric, water … and other utility facilities" (the Access and Utility Easement). 2010 Agreement ¶¶ 1, 6; Compl. ¶ 12.

Under the 2010 Agreement, SBC[4] obtained "the exclusive right to use, and … free access to the Easements" every day at all hours. 2010 Agreement ¶ 6(a);

---

[3]In considering a motion to dismiss, a court may review exhibits attached to the complaint without converting the motion to one for summary judgment. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

[4]SBC obtained the easements and the corresponding rights not just for SBC itself, but also for its "customers, lessees, sublessees, licensees, agents, successors and assigns." *See* 2010 Agreement ¶ 6(a).

2

Compl. ¶ 13. The Easements are "perpetual in nature and only SBC may, upon prior written notice, unilaterally terminate the Easements." Compl. ¶ 21. Also, the Agreement "may not be modified, amended, altered or changed in any respect except by written agreement and signed by each of the parties." *Id.* ¶ 23 (quoting 2010 Agreement ¶ 22).

The 2010 Agreement also provides that the Grantors "shall not disturb [SBC's] right to use the Exclusive Easement in any manner" and gave SBC the right to prohibit anyone from entering into the Exclusive Easement. Compl. ¶ 14 (quoting 2010 Agreement ¶ 6). The agreement also says that the Grantors cannot "in any manner prevent access to, and use of, the Access and Utility Easement by [SBC]," nor can they use the Access and Utility Easement "in any manner that interferes with [SBC's] … use of such area." Compl. ¶ 15 (quoting 2010 Agreement ¶ 6(b)). The Grantors warranted that SBC shall "peaceably and quietly hold and enjoy the Easements … without any hindrance, molestation or ejection by any party whomsoever." Compl. ¶ 16 (quoting 2010 Agreement ¶ 9(a)). The Grantors agreed to "not grant, create or suffer any claim … easement, restriction or other charge or exception to title to the Easements that would adversely affect [SBC's] use of the Easements." Compl. ¶ 17; 2010 Agreement ¶ 9(d); Compl. ¶¶ 18–19, 48 (alleging the agreement bars the Grantors from granting any other easement or interest on the property that would interfere with SBC's use of the Easements, and requires Raina and Lariba to indemnify SBC for all damages incurred by it due to a breach by them of the 2010 Agreement).

3

In 2014, the Grantors sold a part of their property to Lariba Group, LLC (of which Tawfik Tawil is a member) via a quit claim deed. Compl. ¶ 24. Then, in 2016, Lariba sold 10335–51 South Torrence Avenue, including the estate covered by the Access and Utility Easement, to Raina Torrence LLC via a warranty deed. *Id.* ¶ 25. That deed stated that Raina took the property subject to "covenants, conditions, and restrictions of record, private, public and utility easements." *Id.* ¶ 30; R. 1-3, Warranty Deed. SBC alleges that Lariba and Raina purchased their properties subject to the 2010 Agreement. Compl. ¶ 31. SBC also alleges that under the 2010 Agreement, the obligations under it run with the land and bind all owners of that land. *Id.* ¶ 29.

In March 2017, Lariba and Raina entered into a separate easement agreement (the 2017 Agreement), which tried to terminate the 2010 Agreement and create a new easement. Compl. ¶ 32; R. 1-4, 2017 Agreement. In Spring 2017, Raina began constructing a Dunkin Donuts at the same location as the Access and Utility Easement (the easement that SBC used to access the tower). Compl. ¶ 35. Raina's placement of the Dunkin Donuts with its "parking lot, drive thru window, landscaping, curbs and/or fencing" obstructed the Access and Utility Easement and interfered with SBC's use of the Easements. *Id.* ¶¶ 37–39.

According to SBC, the new access easement under the 2017 Agreement lacks an adequate roadway to access the Tower, "run[ning] through fencing, trees, along railroad tracks, and through an area regularly occupied by transient and homeless individuals." Compl. ¶¶ 44–45. SBC has been forced to access the Tower via a different route based on a temporary agreement with a neighbor. *Id.* ¶ 46.

SBC sues Raina and Lariba for breach of the 2010 Agreement (Count 1); declaratory judgment and quiet title (Count 2); specific performance (Count 3); and trespass (Count 4). Compl. ¶¶ 50–94. SBC also brings a claim for tortious interference with contract (Count 5) in the alternative—that is, if the Court finds that Lariba or Raina are not parties to the 2010 Agreement. *Id.* ¶¶ 87–94.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[5]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

As an alternative to its Rule 12(b)(6) motion, Raina moves for a more definite statement under Federal Rule of Civil Procedure 12(e), which allows defendants to seek "a more definite statement of a pleading ... which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

### III. Analysis

#### A. Group Pleading

Raina argues that SBC "lump[s] Raina and Lariba together throughout the enumerated Counts of the Complaint" and fails to treat Raina and Lariba as separate entities for the breach, declaratory judgment and quiet title, and specific performance causes of action. R. 18-1, Raina's Mot. Dismiss Mem. at 1–2, 4.[6] The Court disagrees.[7]

The Complaint adequately puts Raina on notice of the claims against it. Although there is some grouping of Raina and Lariba in various allegations involving the 2010 Agreement, each of the counts incorporate and reallege paragraphs 1 to 49

---

[6]In addition to responding substantively, SBC contends that Raina failed to properly confer on the motion. *See* R. 21, SBC's Resp. at 1, n.1. There is no need to address this procedural argument, because the motion is meritless on other grounds.

[7]Raina relies on *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, to argue that SBC did not adequately plead its causes of action. 20 F.3d 771 (7th Cir. 1994). But *Vicom* involved a fraud claim and thus the complaint there was subject to the heightened pleading standard under Civil Rule 9(b). Here, SBC's complaint sufficiently puts Raina on notice of the claims.

6

of the Complaint (*see* Compl. ¶¶ 50, 64, 72, 82, 87), which specifically allege Raina's breaches and how Raina came to be bound by the 2010 Agreement.

Raina fails to acknowledge the multiple allegations in the Complaint that are indeed specific to Raina. For examples: Raina acquired the Property, which included "the servient estate encumbered by the Access and Utility Easement," from Lariba (Compl. ¶ 25); took the Property subject to the 2010 Agreement (*id.* ¶¶ 26–30); and executed the 2017 Agreement (*id.* ¶ 32). SBC alleges that it was *Raina* that placed the Dunkin Donuts "directly in the path of the Access and Utility Easement," which then blocked access to that easement and disturbed SBC's right to use the Exclusive Easement. *Id.* ¶¶ 35, 37–39. SBC also alleges that it notified Raina's manager of Raina's alleged obstruction via correspondences from 2017 to 2021. *Id.* ¶ 42.

To the extent that some allegations in the Complaint assert that Raina and Lariba committed the same acts (for example, entering into the 2017 Agreement), SBC is right that the Defendants can, of course, have overlapping liabilities. It makes sense that the claims would—at times—refer to Raina and Lariba together, because SBC alleges that *both* have become parties to the 2010 Agreement (and had the same obligations under the same agreement) and *both* breached that agreement by entering into another agreement together. And, in any event, the specific counts incorporate the numerous allegations specifying Raina's alleged breaches.

Because SBC has adequately put Raina on notice of the claims, which is all that is required at this stage, the Court denies Raina's alternative request for a "more

7

definite statement" under Civil Rule 12(e). The Complaint is not "so vague or ambiguous that [Raina] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

### B. Economic Loss Doctrine

Raina argues that SBC's claims for declaratory judgment and quiet title, specific performance, trespass, and tortious interference are all barred by Illinois's economic loss doctrine (also known as the *Moorman* doctrine), under which a "plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort …." *Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982).

But the *Moorman* doctrine does not apply to these claims. In *Moorman*, the Illinois Supreme Court held that "solely economic losses are not recoverable in tort actions for product liability." *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 725 (Ill. App. Ct. 2004) (citing *Moorman*, 435 N.E.2d at 448). Economic loss is "defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman*, 435 N.E.2d at 449 (cleaned up). But here SBC seeks equitable relief in addition to damages, and SBC's claims (and the remedies sought for them) seek recovery for the alleged loss of and damage to its *property*: the Easements. The doctrine does not apply in these circumstances. *See Bywater v. Wells Fargo Bank, N.A.*, 2014 WL 1256103, at *6 (N.D. Ill. Mar. 24, 2014) (holding that because "plaintiff [asserting trespass claim] seeks to recover for loss of and physical

8

damage to real and personal property," which "does not qualify as economic loss[,]" the *Moorman* doctrine does not apply).

It is worth noting too that the tortious interference claim (Count 5) is asserted as an *alternative* to the claim for breach of contract. That is, SBC asserts Count 5 *only if* the Court (or a jury) determines that Raina is not a party to the 2010 Agreement. Compl. ¶¶ 90–91, 93. So the *Moorman* doctrine would not apply to that claim anyway. And even if Count 5 was not asserted in the alternative, the Seventh Circuit has held that the *Moorman* doctrine "does not apply to actions for intentional interference with a contract …." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003).

### C. Trespass (Count 4)

Raina next specifically targets the trespass claim. According to Raina, SBC fails to plead intent, including that Raina knew "with a high degree of certainty that the intrusion will naturally follow." Raina's Mot. Dismiss Mem. at 6. But this argument fails because, as SBC correctly argues, the 2017 Agreement expressly references—and tries to terminate—the 2010 Agreement. It is reasonable to infer (and SBC gets the benefit of reasonable inferences at this stage) that the explicit reference to the 2010 Agreement means that Raina knew full well that the intrusion would happen. What's more, SBC pleads that the 2010 Agreement was publicly recorded with the Cook County Recorder of Deeds, and that, in 2016, Lariba conveyed the Property to Raina via a warranty deed, which stated that Raina took the Property subject to "covenants, conditions, and restrictions of record, private, public and utility

9

easements." Compl. ¶¶ 22, 30. Drawing reasonable inferences in SBC's favor, SBC has pleaded that Raina knew about the 2010 Agreement (and its terms) and thus knew, "with a high degree of certainty," that an intrusion on SBC's easements would "naturally follow" its construction of the Dunkin Donuts at "the same location as [the Access and Utility Easement]." Compl. ¶¶ 35, 37, 84 ("Defendants intentionally constructed, or permitted the construction of, the Dunkin Donuts in the path of [the Access and Utility Easement].").[8]

### D. Tortious Interference with Contract (Count 5)

Next, Raina argues that the tortious-interference claim fails to adequately allege that Raina had specific knowledge of the 2010 Agreement and its terms and that Raina intended to cause Lariba to breach that agreement. As explained earlier, however, with the benefit of reasonable inferences in SBC's favor (and probably even without it), SBC adequately pleads Raina's knowledge of the 2010 Agreement and its terms. On intent, SBC alleges that Raina "intentionally and without justification induced [Lariba] to breach the [2010] Easement Agreement" by executing the 2017 Agreement with Lariba. Compl. ¶ 91. SBC also alleges that Raina induced Lariba to breach its obligations under the 2010 Agreement (of which Raina had notice) by

---

[8]Raina argues that SBC fails to plead whether the 2017 Agreement was entered into before or after the construction of the Dunkin Donuts being approved, but because SBC raises this argument for the first time in reply, that argument is waived. *See Citizens Against Ruining the Env't v. E.P.A.*, 535 F.3d 670, 675–76 (7th Cir. 2008). In any event, SBC does allege that Raina executed the 2017 Agreement on March 9, 2017, and began constructing the Dunkin Donuts in Spring 2017. Compl. ¶¶ 32, 35.

trying to terminate that agreement and creating a conflicting easement. *Id.* SBC's allegations suffice at this stage for the tortious-interference claim.

## IV. Conclusion

Raina's motion to dismiss is denied in its entirety. Raina's request for a more definite statement under Civil Rule 12(e) is also denied. Raina shall answer the Complaint by September 9, 2024. The parties shall file a proposed discovery schedule on September 13, 2024. The tracking status hearing of August 30, 2024, is reset to September 20, 2024, at 8:30 a.m. (but to track the case only, no appearance is required).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 21, 2024