UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SBC TOWER HOLDINGS, LLC, | |
| Plaintiff, | |
| v. | No. 22 CV 3219 |
| | Judge Georgia N. Alexakis |
| LARIBA GROUP, LLC, and RAINA TORRENCE, LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff SBC Tower Holdings, LLC ("SBC") owns a telecommunications tower in Chicago. SBC relied on easements on property owned by defendant Lariba Group, LLC ("Lariba"), to access the tower, but claims that after Lariba sold some of its property, the new owner, defendant Raina Torrence, LLC ("Raina"), constructed a building that interfered with one easement. SBC sued both Lariba and Raina for breach of contract, trespass, and tortious interference with contract, seeking both declaratory and injunctive relief. [1]. Raina brought crossclaims against Lariba for contribution, good faith and dealing, and fraudulent concealment. [82]. SBC and Lariba now bring cross-motions for summary judgment on SBC's claims against Lariba; SBC moves for summary judgment on its claims against Raina; and Lariba moves for summary judgment on Raina's crossclaims. [95], [103], 113].

For the reasons given below, SBC's motion for summary judgment against Lariba and Raina is denied. [113]. Lariba's motion for summary judgment on SBC's

claims against it is granted in part and denied in part. [103]. Lariba's motion for summary judgment on Raina's crossclaims is granted. [95].

## I.    Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On review of cross-motions for summary judgment, courts "view all facts and inferences in the light most favorable to the nonmoving party on each motion." *See Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015).

## II.    Background

The parties agree on the following. In spring of 2017, Raina began constructing a Dunkin'[1] location in what had been a vacant parking lot in the South Deering community area of Chicago's far South Side. [82] ¶ 35; [124] ¶ 31.[2] Raina purchased

---

[1] Formerly known as Dunkin' Donuts. *See* "A Letter from Dunkin' CMO Tony Weisman" (https://news.dunkindonuts.com/blog/justcallusdunkin).

[2] Raina does not respond to SBC's assertion in its Local Rule 56.1 statement that Raina constructed the Dunkin. [124] ¶ 31. But neither does Raina deny it, and so the Court deems the fact admitted. *See* NDIL LR 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

the vacant parking lot from Lariba on December 5, 2016, with the intent of building the Dunkin'. [124] ¶¶ 20, 30; [138-1] ¶¶ 1–2. But back in 2010, SBC paid Tawfik and Azizeh Tawil—Lariba members and Lariba's predecessors in interest in the property—for access to an adjacent telecommunications tower owned by SBC. [121] at 14–15 ¶¶ 3–8.[3] Two easements were created at that time: the "Exclusive Easement," which held the tower, and an "Access and Utility Easement" for "ingress and egress from and to the Exclusive Easement" (hereafter "the Access Easement"). [115-4] ¶ 6(a)–(b). These easements were memorialized in a written agreement ("the 2010 Agreement"), which was recorded at the Cook County Recorder's Office. *See* [115-4].

The current disposition of the easements is more complicated, and this is where the parties begin to part ways. SBC maintains that the 2010 Agreement is perpetual, runs with the land, and may not be modified or terminated without SBC's assent. [115] ¶¶ 9–14. Raina acknowledges that it knew of the Access Easement when it purchased the vacant parking lot from Lariba, but says it was assured that Lariba "would remove the easement from the underlying property after the sale of the property from Lariba to Raina," and that it only went forward with the purchase based on this assurance. [138-1] ¶¶ 5–8. Lariba denies that it made any promise of the sort. *Id.* Lariba and Raina agree that Lariba did not remove the Access Easement before the 2016 sale. *Id.* ¶ 11. And Raina does not dispute that the 2010 Agreement

---

[3] Lariba filed multiple documents at Docket Number 121. For Lariba's response to SBC's Local Rule 56.1 Statement, the Court cites to both the blue ECF number at the upper right of the document and the relevant paragraph number.

"is a valid and enforceable contract," though it disputes that it is bound by the contract. [124] ¶ 9; *see also id.* ¶ 14.

The current state of the easements is relevant because SBC asserts that the because of the placement of the Dunkin' drive-through and accompanying fencing, SBC "has been unable to use the Access and Utility Easement since the Dunkin Donuts was constructed." [124] ¶¶ 32–33, 39. For its part, Raina denies that "a portion of the [Dunkin'] is directly in the path of the Easement or that it blocked the Easement to the extent claimed by Plaintiff." *Id.* ¶ 31; *see also id.* ¶ 32 ("A drive through does not block access to a telecommunications tower."). SBC repeatedly contacted Raina regarding use of the Access Easement after construction began at the Dunkin' in spring 2017. *Id.* ¶ 35. But SBC and Raina were unable to resolve the problem, despite numerous discussions. *Id.* ¶ 38; [131] ¶¶ 7–24 (timeline of interactions).

There is a further complication. SBC attached to its complaint a document dated March 9, 2017, and titled "Permanent Easement Agreement" (hereafter "the 2017 Agreement"). [1-4]. This document purports to be "prepared by Tawfik Tawill," signed by representatives of both "Lariba Group, Inc." and Raina, and notarized by a Mosa Elmosa. [115-11] at 1–3. Under the terms of the 2017 Agreement, Lariba and Raina "agreed to remove the Ingress and Egress Easement to the communication tower." *Id.* at 1. Raina does not dispute that it and Lariba executed the 2017 Agreement and recorded it with the Cook County Recorder's Office on March 14, 2017. [124] ¶¶ 25–26. But Lariba Group, LLC (not "Inc.") and its owner Tawfik Tawil

(just one "l") deny that any such agreement exists. [121] at 17 ¶ 25; [50] ¶ 32. Tawil denies preparing the document, denies signing the document, and asserts that because he was in (unrelated) litigation with Elmosa at the time he would not have used him as a notary. [50] ¶ 32; [103] at 8 ("It stretches credibility beyond the limit to suggest that Tawil prepared a document that misspells his own name and refers to a nonexistent corporation as the signer."). Indeed, Lariba takes the position that "[t]he entire [2017 Agreement] reeks of being forged by a non-lawyer." [103] at 9.[4]

On June 21, 2022, SBC sued Lariba and Raina in federal court. [1]. SBC claims that Raina and Lariba breached the 2010 Agreement by constructing and/or allowing the construction of the Dunkin' and seeks damages and a declaratory judgment that the 2017 Agreement was invalid and the 2010 Agreement controls. *Id.* ¶¶ 50–71. SBC also seeks injunctive relief in the form of an order "[r]equiring Defendants to remove any obstructions from the Easements and to fully restore the Easements." *Id.* ¶ 81(b). Raina has denied any liability or wrongdoing, and brought cross-claims against Lariba for contribution, good faith and fair dealings, and fraudulent concealment. [82] at 27–30.

---

[4] Lariba makes a perfunctory request for sanctions under Federal Rule of Civil Procedure 11 against Raina in its opening brief. [95] at 2. But perfunctory arguments are waived. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022). Lariba includes a more robust argument for sanctions in its reply brief, [138] at 7–9, but "[j]ust as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs." *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023). If Lariba wishes to pursue sanctions against Raina, it may file a separate motion to which Raina will be expected to respond substantively.

### III.    Analysis

### A.    SBC's Claims

The Court begins with the cross-motions for summary judgment regarding SBC's claims. [103], [113]. Lariba moves for summary judgment on all of SBC's claims against it. [103] at 3, 9. SBC moves for summary judgment against both Lariba and Raina on Counts I (breach of contract) and II (declaratory judgment). [113] at 1. SBC also moves for summary judgment against Raina on Count IV (trespass) and for Count V (tortious interference with contract) just against Lariba. *Id.*

### 1.    The Access Easement

The first question is whether the Access Easement exists. All parties agree that the 2010 Agreement between SBC and the Tawils creating the Exclusive Easement and the Access Easement was a valid contract. [121] at 15 ¶ 9–13; [124] ¶¶ 9–11. The Court thus concludes that under the terms of the 2010 Agreement, the Tawils successfully granted two easements on their property to SBC under Illinois law. *See McMahon v. Hines*, 298 Ill. App. 3d 231, 236 (2d Dist. 1998) (requirements for easement by contractual agreement).

No party argues that the Access Easement created by the 2010 Agreement was extinguished before Lariba conveyed the property to Raina in December 2016, and none contend that the Access Easement was successfully extinguished by the 2017 Agreement—if, indeed, such an agreement even exists. *See* [103] at 5 (Lariba writes that "[s]uch an 'agreement' would be as legally relevant as an agreement between [Raina] and any random person off the street"); [124] ¶ 9 (Raina does not dispute "that the Easement Agreement is a valid and enforceable contract between [SBC] and

6

the Tawils"). The Court therefore concludes that the Access Easement created by the 2010 Agreement currently exists.

The next question: If the Access Easement exists, to whom do the terms of the 2010 Agreement apply? SBC argues that it applies to both Lariba and Raina. [114] at 9–10. Raina denies that it is subject to the Access Easement because it was not a party to the 2010 Agreement, [123] at 17, while Lariba contends that after it sold the property to Raina, it left the picture, [121] at 3 ("Lariba *used to be* the owner of the servient tenement. But as soon as that tenement was sold, Lariba was no longer bound by the easement as to that tract of land.").

The Court turns to the text of 2010 Agreement, which under Illinois law is "construed using the same rules applied to deeds and other written instruments or agreements." *527 S. Clinton, LLC v. Westloop Equities, LLC*, 2014 IL App (1st) 131401, ¶ 28. With respect to the Access Easement, the 2010 Agreement states that it grants to SBC and "its … lessees, sublessees, licensees, agents, successors and assigns … a perpetual, non-exclusive easement." [115-4] ¶ 1. The easement "shall be perpetual, unless [SBC] provides written, recordable notice of its intent to terminate this Agreement." *Id.* ¶ 4. The 2010 Agreement also provides that "the Grantor shall not in any manner prevent access to, and use of" the easement, *id.* ¶ 6(b), and that the agreement "shall be binding on … the parties hereto and their respective … successors" and that the easement "shall run with the affected lands," *id.* ¶ 3. There is no dispute that Raina is Lariba's successor in interest in the property that includes the Access Easement. Thus, under the plain language of the 2010 Agreement, the

7

Access Easement applies to Raina's use of that property. *See 527 S. Clinton, LLC,* 2014 IL App (1st) 131401, ¶ 28.

Still, Raina argues that it is not bound by the Access Easement because "Raina was never referenced in the [2010] Easement Agreement." [123] at 17. But Raina does not dispute that the warranty deed conveying the property from Lariba to Raina stated that the property was conveyed "subject to covenants, conditions and restrictions of record, private, public and utility easements." [115-7] at 1; [124] ¶ 22. Nor does Raina dispute that the 2010 Agreement creating the Access Easement was properly recorded in the Cook County Recorder's Office and acknowledges that it knew of the 2010 Agreement before purchasing the property from Lariba. [124] ¶¶ 5, 27. Under Illinois law, "an easement appurtenant runs with the land and may be transferred." *Kankakee Cnty. Bd. of Review v. Prop. Tax Appeal Bd.*, 226 Ill. 2d 36, 53 (2007).[5] "[P]urchasers of land burdened with an easement take the land subject to easements expressly created of which they have notice." *Aebischer v. Zobrist*, 56 Ill. App. 3d 151, 155 (5th Dist. 1977). Because there is no dispute that the easement was valid and that Raina had notice of the easement, Raina is subject to the easement.

As to Lariba, SBC argues that Lariba admitted that it was bound by the terms of the 2010 Agreement in its answer and cannot now dispute that it is. [114] at 9. But the 2010 Agreement created two easements: (1) the Exclusive Easement, which holds

---

[5] An "easement appurtenant" is an easement that, like the one at issue here, is "created to benefit another tract of land, the use of easement being incident to the ownership of that other tract." *Kankakee Cnty.*, 226 Ill. 2d at 53 (quoting Black's Law Dictionary 549 (8th ed. 2004).

the tower, and (2) the Access Easement, for ingress and egress from and to the Exclusive Easement. [115-4] ¶ 6(a)–(b). Lariba admits that it still owns the portion of the property subject to Exclusive Easement (i.e., the property that holds the cell tower)—and so to that extent, Lariba remains subject to the Easement Agreement. [103-1] at Ex. 4, ¶ 6 (Tawil attests that "[t]he property of the SBC cell tower is still Lariba's"); [115-4] ¶ 6(a); [121] at 16 ¶ 21. But Lariba later sold the adjacent vacant parking lot—with the Access Easement and the later-constructed Dunkin'—to Raina. [121] at 16 ¶ 20. To the extent SBC's position is that Lariba would have been bound by the terms of the Access Easement *before* any sale to Raina, the parties do not appear to dispute that point (and if they do, SBC's position is clearly correct based on the language of the Easement Agreement). But the Access Easement would not bind Lariba *now*. As discussed above, easements appurtenant run with the land, and so are transferred with it. *Kankakee Cnty.*, 226 Ill. 2d at 53. And that is the scenario the parties contemplated here. [115-4] ¶ 3 ("It is the intention of the parties hereto that the various rights, obligations, restrictions and easements created in this Agreement … shall run with the affected lands and shall … be binding upon all future owners and lessees of the affected lands and all persons claiming under then.").[6]

---

[6] SBC appears to argue that because Lariba was a "successor" to the 2010 Agreement— entered into by the Tawils (not Lariba) and SBC—Lariba remains forever bound by the 2010 Agreement. [114] at 9 ("Lariba is bound by the Easement Agreement by virtue of being successor to the original Grantors."). SBC also appears to posit that Lariba remains bound to the Access Easement by virtue of remaining bound to the Exclusive Easement. *Id.* at 10. Neither position can be squared, however, with the principle that easements appurtenant run with the land. They also contradict the above-cited language from the 2010 Agreement, which is consistent with this principle and further makes clear that the easements bind "future owners and lessees." [115-4] ¶ 3. Once Lariba sold the vacant parking lot to Raina, it no longer owned it and thus could not be charged with maintaining the Access Easement.

Now the most critical question: Does the Dunkin' actually interfere with SBC's use of the easements? Illinois law provides that "a servient owner may use his land for any purpose consistent with the dominant owner's enjoyment of his easement." *McMahon v. Hines*, 298 Ill. App. 3d 231, 240, 697 N.E.2d 1199, 1206 (1998). Raina, as the servient owner, is entitled to use its property—for example, by building a donut shop—if that use does not violate the terms of the easement. Relevant here, those terms provide that Raina "shall not in any manner prevent access to, and use of, the … Easement by [SBC] or its … lessees." [115-4] ¶ 6(b).

SBC alleges that the easement is blocked, and Raina has denied this contention. [82] ¶¶ 37–39; *see also* [124] ¶ 32 ("A drive through does not block access to a telecommunications tower."). Raina also argues that SBC "has presented no evidence that it is *actually prevented* from accessing their tower." [123] at 1. And indeed, given the otherwise substantial record in this case, the record evidence SBC relies on for this key issue is surprisingly sparse. SBC cites to a declaration from Thomas Caruso, identified as "Dispute Resolution Counsel" for an affiliate of American Tower, the company that subleases the cell tower from SBC. [115-3] ¶ 2.[7] As relevant here, Caruso states that he has "personal knowledge of the matters set forth [in his declaration]," that he is "familiar with American Tower's operations relating to subleasing, servicing, and otherwise accessing the Tower," and that "[s]ince the Spring of 2017, access to the Exclusive Easement (and Tower) via the Access [] Easement has been blocked by a Dunkin Donuts restaurant with a drive-

---

[7] SBC also cites to Raina's answers to the complaint, [115] ¶ 33, but as the Court just noted, that pleading does not yield this key point. [82] ¶¶ 37–39.

thru and fencing thereby preventing SBC and its sublessees, like American Tower, from servicing the Tower or accessing the Exclusive Easement via the Access and Utility Easement" *Id.* ¶¶ 1, 7–8. Raina argues that Caruso lacks sufficient personal knowledge to testify whether the Access Easement is blocked by the Dunkin' and that his affidavit thus cannot provide a factual basis for summary judgment. *See* [123] at 4–6 ("Plaintiff has failed to provide any foundational testimony as to how Mr. Caruso has personal knowledge of the site or obstruction of the Easement.").

The Court agrees with Raina. Federal Rule of Civil Procedure 56(c)(4) requires: "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." But Caruso does not explain the basis for his "personal knowledge" that easement access is blocked. Caruso does not, for example, state that he has ever been to the property or seen the drive-through or fence. The Court thus cannot determine if Caruso is competent to testify regarding whether the Dunkin' blocks access. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 454 (7th Cir. 2015) ("The affidavit was entitled to no weight, as it had no foundation."). Caruso also does not state where he obtained his knowledge beyond vaguely stating that he is "familiar with American Tower's operations." [115-3] ¶ 7. This presents another problem. If, for example, Caruso's knowledge of the blocked access is based on a

conversation with an American Tower employee, the affidavit would rely on an out-of-court statement for the truth of the matter asserted, classic hearsay. And a party cannot rely on inadmissible hearsay to win at summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (collecting cases).

Separately, Caruso provides no details regarding what access is blocked or how. Are maintenance workers unable to bring certain necessary equipment to the tower because of the fence? Is the drive-through sometimes too busy to allow vehicular access to the tower? Does maintenance of the tower require a vehicle at all? If so, where must it be located? Where is the fence in relation to either the Dunkin' or the tower? The Court cannot say from the evidence in the record. Thus, even if the Court assumes Caruso's affidavit is admissible, the affidavit lacks sufficient information to allow the Court to determine as a matter of law that the Dunkin' blocks the Access Easement.

For its part, Raina relies on what appears to be a low-resolution satellite photo of the property to dispute that access is blocked and/or to what degree. [124] ¶ 31 (citing [124-9]). The photograph, included with SBC's complaint, *see* [1-5], shows a drive-through and parking lot around a building labeled "DNKN." A red arrow points through the drive-through to a white structure—presumably the tower—with a black box drawn around it. The Court is unable to discern any useful information from this photograph. The black box has been drawn around the tower in such a way that it has effectively redacted the relevant areas from view. It is not clear from the photograph, for example, whether fencing or other landscaping obstructs (or does not

12

obstruct) SBC's access to the tower. It is entirely possible that fencing actually blocks SBC's access, just as it is entirely possible that SBC's access remains unfettered. But the Court can't tell (either way) owing to the placement of the black box.

Therefore, based on the current record, there is a genuine dispute of material fact regarding whether access to the tower is blocked.[8]

## 2. Breach of Contract (Count I) and Tortious Interference (Count V)

Turning now to SBC's legal claims against both defendants, the Court finds more material factual disputes that preclude summary judgment for SBC and Lariba.

SBC argues that Lariba breached the 2010 Agreement by "selling a portion of the Underlying Property to Raina knowing that Raina intended to construct a Dunkin Donuts on the Underlying Property that would likely interfere with the Access and Utility Easement," [114] at 12, and that Raina breached the 2010 Agreement by "intentionally building a Dunkin Donuts with a drive-thru in the path of the Access and Utility Easement," *id.* at 13. In the alternative, SBC argues that Lariba is liable for tortious interference by executing the 2017 Agreement. *Id.* at 16. Lariba and Raina both deny any intent to block the easement. *See* [121] at 18 ¶ 34 ("Lariba knew Raina wanted to make a Dunkin Donuts, not that this would likely interfere with the easement. Quite frankly this is a stretch."); [124] ¶ 34. And as just discussed, the evidentiary record leaves a genuine dispute of material fact regarding whether the

---

[8] From Lariba's perspective, the interference is uncontroverted, but it supports that position with the same two pieces of the record the Court has just set aside: Raina's answer to SBC's complaint and Caruso's affidavit. *See* [121] at 18 ¶ 33. Lariba therefore has not established as a matter of law that there is *no* interference with the Access Easement.

13

Access Easement is actually blocked. Given this state of affairs, the Court cannot conclude as a matter of law that the 2010 Agreement was or was not breached.

SBC's theories of liability for Lariba present another difficulty. It is true that the 2010 Agreement states that "Grantor will not improve or grant any other easement, ground lease, lease, *sale* or similar interest of or upon the premises if such improvement or interest would interfere with Grantee's use of the Easements" and that "Grantor … hereby agrees to use its best efforts to prevent" interference with the cell tower transmission or access to the cell tower. [115-4] ¶ 10 (emphasis added). But even if the Court assumes that this provision means that the 2010 Agreement prohibited Lariba from any sale it knew would interfere with easement access, there is a genuine dispute of material fact about Lariba's knowledge. SBC relies on two pieces of evidence to show Lariba knew the Dunkin' would block the easement: (1) the sales agreement between Lariba and Raina, and (2) a November 28, 2016 email exchange.[9] *See* [115] ¶ 34 (citing [115-13] and [115-15]). This is puzzling, because while both documents reference Raina's plan to build the Dunkin', neither document gives any indication that the contemplated Dunkin' would block easement access. Lariba denies knowledge but cites nothing in the record to support that denial. [121] ¶ 34. Lariba does not, for example, provide an affidavit from Tawil denying that he knew Raina would block access or, in a related vein, denying that he induced Raina into the transaction through a promise to extinguish the easement. (Yes, Lariba

---

[9] SBC does not identify the participants in the email exchange or how they relate to the case, though the Court will infer that the email address ttawil99@yahoo.com belongs to Tawfik Tawil.

denies that any such promise was made, *see, e.g.*, [138-1] ¶¶ 5–8; [103] at 7 "Lariba certainly did not induce [Raina] to breach the contract."), but it points to no evidence in the record to support that position.) There is thus a genuine dispute of material fact regarding Lariba's knowledge of Raina's plans, or any role that Lariba may have played in inducing those plans, that prevents judgment as a matter of law (to either SBC or Lariba).

SBC next argues that both Raina and SBC breached the 2010 Agreement by attempting to extinguish the Access Easement via the 2017 Agreement. [114] at 11. SBC also argues that the 2017 Agreement is a sufficient basis to find that Lariba tortiously interfered with SBC's agreement with Raina. *Id.* at 16–17. The 2010 Agreement provides that it "may not be modified, amended, altered or changed in any respect except by written agreement and signed by each of the parties." [115-4] ¶ 22.

Lariba denies that its member Tawfik Tawil signed any agreement modifying the 2010 Agreement. [121] at 4 ("Tawil states that he did not sign the document purporting to extinguish the SBC easement."). Neither SBC nor Raina argue that anyone else signed any such agreement on Lariba's behalf. Lariba relies on Tawil's affidavit, which states that "I never signed the purported 'Permanent Easement Agreement' … That is not my signature." [103-1] at PageID 859.[10] SBC responds that Tawil's affidavit is "self-serving" and thus cannot defeat a motion for summary judgment. [114] at 20 ("[A] self-serving affidavit disclaiming the authenticity of a

---

[10] The Court uses the blue CM/ECF pagination in the upper right corner of the filing.

notarized and recorded document, without record support, is not enough to entitle Lariba to summary judgment.").

SBC misunderstands the nature of the problem with so-called "self-serving affidavits." The rule is that "self-serving statements contained in an affidavit will not defeat a motion for summary judgment *when those statements are without factual support in the record.*" *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (cleaned up). And, critically, "[t]he record … may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial." *Id.* (cleaned up). In other words, "[a] self-serving affidavit *should* be considered … when it meets the requirements of evidence on summary judgment." *Id.* at 506 (emphasis added). *See also id.* (abuse of discretion where district court refused to consider self-serving affidavit that met evidentiary requirements). SBC does not explain why Tawil's affidavit does not meet "the usual requirements for evidence on summary judgment." *Buie*, 366 F.3d at 504. And the Court does not see why the affidavit would not: Tawil would certainly have personal knowledge of whether he signed a document, and the specific facts of whether he drafted and signed the 2017 Agreement create an issue for trial. The Tawil affidavit is thus part of the record, and Lariba may rely on the affidavit to create a genuine dispute of material fact around Tawil's signature.

16

SBC further argues that Tawil's statements are not credible or contradicted by other record evidence. [114] at 21–22 ("[N]ot only are the statements in Mr. Tawil's affidavit unsupported by the record—they are directly *contradicted* by the documentary evidence."). But this does not help SBC at this stage, because the Court cannot weigh evidence or make credibility determinations at summary judgment. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

SBC next invites the Court to "[c]ompare the [] allegedly 'forged' signatures in the [2017 Agreement] with the 'genuine' signatures of Mr. Tawil in the [2010] Easement Agreement and Mr. Elmosa in his affidavit." [114] at 22–23. SBC cites *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237 (3d Cir. 1987), for the proposition that the Court may engage in this kind of handwriting analysis. The Court declines this invitation. Again, it is well established that a court evaluating a motion for summary judgment should not "weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller*, 761 F.3d at 827 (citations omitted). Tawil's sworn affidavit states that the signature on the 2017 Agreement is not his. SBC has not established that this evidence is inadmissible or in some other way infirm. Thus, even if the Court engaged in what, in effect, would be expert handwriting analysis and reached the conclusion SBC urges, the existence of Tawil's sworn affidavit still leaves a material factual dispute that precludes summary judgment for SBC. And because Tawil's (purported) signature appears on the face of the 2017 Agreement,

Lariba cannot prevail on summary judgment either. The 2017 Agreement itself serves as evidence that Tawil signed it. [11]

SBC also argues that Raina breached the 2010 Agreement "by executing and recording the [2017 Agreement] thereby attempting to extinguish the Access and Utility Easement without SBC's written consent." [114] at 11. Unlike Lariba, Raina "does not contest that it executed the [2017 Agreement]." [124] ¶¶ 25–26. Instead, Raina argues that if the 2017 Agreement is a "legal nullity"—a characterization all parties agree with—it could not have breached the 2010 Agreement. [123] at 7. SBC responds in turn that "Raina's <u>attempt</u> to do something—even if, as is here, the Easement Agreement prohibits such attempt—is the hornbook definition of breach of contract." [130] at 4. SBC cites neither a hornbook nor any case for the proposition that *attempted* breach of contract gives rise to liability, nor does it explain how there could be liability when it has not articulated a theory of damages tied to the attempted breach. The Court's research also came up short,[12] and "Seventh Circuit

---

[11] *Nieves* does not change this outcome. In that case, the Third Circuit declined to find error when the district court found that the plaintiff-appellant's assertion that of a forged signature did not create an issue of fact because the signature was "remarkably similar to the signatures of the plaintiff that appear on numerous exhibits attached to his opposition to the motion for summary judgment." *Nieves*, 819 F.2d at 1252. The Third Circuit further noted that "the documents before the district court were admittedly executed by [the plaintiff] in connection with his employment on the same date." *Id.* Setting aside the fact that SBC is asking the Court to rely on a 38-year-old, out-of-circuit case, *Nieves* ultimately was a case where the forgery dispute was "so one-sided that one party must prevail as matter of law." *Id.* With Tawil's affidavit in the mix, the same is not true here.

[12] The closest thing to an "attempted breach of contract" theory the Court could find is a Seventh Circuit case noting that in some cases an attempted breach of contract might be treated as repudiation or anticipatory breach, *see First Nat. Bank of Louisville v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 933 F.2d 466, 469 (7th Cir. 1991), but SBC does not make this argument.

precedent is clear that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022).

The Court therefore denies SBC's motion for summary judgment as Count I (breach of contract) against Lariba and Raina and Count V (tortious interference) against Lariba. Lariba's cross-motion for summary judgment against SBC as to Counts I and V is also denied: Tawil's purported signature and his affidavit create a genuine dispute of material fact regarding whether he signed the 2017 Agreement, and Lariba has presented no evidence establishing that it did not know at the time of the sale that Raina's plans for the property might disrupt easement access.

### 3.  Declarative Judgment (Count II)

In Count II, SBC seeks a declaratory judgment against Lariba and Raina that the 2017 Agreement is invalid and that the 2010 Agreement is enforceable. [114] at 7. SBC argues that "there can be no dispute that the [2010] Agreement is a valid and enforceable contract that controls over the [2017 Agreement]." *Id.* at 8. This is correct: as discussed above, neither defendant contends that the 2017 Agreement has any relevant effect on the easements or the property, and neither defendant denies that the 2010 Agreement is a valid and enforceable contract.

Illinois law grants courts the ability to make "binding declarations of rights … of the construction . . . of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701. But Illinois law also requires that such a declaratory judgment involve an "actual controversy" between the parties, which requires "a concrete dispute admitting of an immediate

and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Cahokia Unit Sch. Dist. No. 187 v. Pritzker*, 2021 IL 126212, ¶ 36 (cleaned up).

Because no party actually disputes SBC's position that "the Easement Agreement is a valid and enforceable contract that controls over the [2017 Agreement]," [114] at 8, there is no active controversy that would allow the Court to issue a declaratory judgment on the issue. The Court therefore denies SBC's motion for summary judgment on Count II as moot. *See Weber v. St. Paul Fire & Marine Ins. Co.*, 251 Ill. App. 3d 371, 373, 622 N.E.2d 66, 68 (3d Dist. 1993) ("A declaratory judgment action is not intended to permit moot or hypothetical cases."). Lariba's motion for summary judgment [103] does not discuss Count II, so to the extent that its motion was intended to encompass Count II, it is also denied as moot. *Id.*

### 4. Trespass (Count IV) and Specific Performance (Count III)

SBC's trespass claim against Raina relies on interference with access to the easement. *See* [1] ¶ 85. But as discussed above, the Court cannot determine on the record before it whether the Dunkin' actually interferes with the Access Easement. The Court therefore denies SBC's motion for summary judgment on Count IV against Raina. Because the Court denies SBC's motion on this basis, it does not reach Raina's affirmative defenses.

With respect to Lariba's cross-motion for summary judgment on SBC's specific performance and trespass claims, Lariba argues that those claims cannot apply to it "because Lariba makes no claim of title to the easement, and Lariba is in no position

to perform on the contract – given that Lariba does not own the property. Similarly, Lariba is not trespassing against SBC's easement." [103] at 6. SBC does not explain how Lariba could be the subject to a quiet title action, how Lariba could perform on the Agreement on the property now owned by Raina, or how Lariba could trespass on SBC's easement on Raina's land. *See Chicago Title Land Tr. Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 76 ("In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement.").

Indeed, SBC does not respond to Lariba's arguments regarding Counts III and IV at all. The Court agrees with Lariba that, given the undisputed facts that Lariba sold the property to Raina, and the construction of the Dunkin' only began after the sale, Counts III and IV cannot apply to Lariba. The Court thus grants Lariba's motion for summary judgment on Counts III and IV.

## B. Raina's Claims

Lariba also moves for summary judgment on Raina's cross-claims against it. [95]. In its cross-complaint, Raina alleged that at the time Lariba sold the property to Raina, "Lariba did not warn or otherwise inform Raina that there were any encumbrances or easements on the property that Raina was purchasing" and that "[h]ad Raina known of any encumbrances or easements, Raina would not have executed the Warranty Deed in the manner that it did on or about December 5, 2016." [82] at 28 ¶¶ 5–7.

Because of this alleged lack of disclosure, Raina claims that Lariba is liable to Raina for contribution if Raina is found liable for SBC's claims. *Id.* at 28 ¶¶ 9–11.

Raina further claims that "as a result of Lariba's representations and omissions regarding the easement," Raina was not able to use the property in the manner it expected, and that Lariba therefore breached the implied covenant of good faith and fair dealing in the deed transferring the property. *Id.* at 29 at 13–18. Finally, Raina claims that Lariba's failure to "inform Raina of the presence of the easement on the property Raina was to receive"—a "material term for Raina" that "would have greatly impacted Raina's willingness to enter into the Warranty Deed"—represents fraudulent concealment, because Raina "would not have executed the Warranty Deed as written had it known of the easement." *Id.* at 29–30 ¶¶ 20–27.

However, at summary judgment, Raina now "does not dispute its prior knowledge of the [2010] Agreement" and acknowledges that it "became aware of the referenced easement during pre-transaction negotiations" with Lariba. [124] ¶ 27. This causes problems for Raina's claims, which the Court proceeds through in turn.[13]

Raina's claim of contribution is premised on Lariba's lack of disclosure regarding the easement. [82] at 28 ¶ 11 ("To the extent that Raina can be found liable for the construction of the Dunkin Donuts on the property, Lariba is contributorily liable for Raina's damages as Lariba did not disclose the easement prior to December 5, 2016."). That premise has fallen away, as just discussed. Even if it were still intact, Raina's contribution of claim fails as a matter of law for other reasons.

---

[13] Raina notes that Lariba's motion for summary judgment as to Raina does not rely on record facts. [133] at 10. Failure to cite to the factual record can be fatal at summary judgment, but as Lariba relies entirely on legal arguments in its motion, it is not fatal here.

Under the Illinois Joint Tortfeasor Contribution Act, "where 2 or more persons are subject to liability *in tort* arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them." 740 ILCS 100/2(a) (emphasis added). As Lariba correctly notes, this is restricted to actions in tort, so Lariba cannot be liable for contribution to Raina for the SBC's breach of contract claim. [95] at 3; *see also Huntington Nat'l Bank v. Midwest Heart & Vascular Assocs.*, Inc., 683 F. Supp. 3d 781, 784 (N.D. Ill. 2023) ("This case is a pure breach of contract action. Breach of contract is not a tort.").

Raina contends that if it is found liable for SBC's tort theories of trespass and/or tortious interference, "Lariba would be liable for contribution proportionate with Lariba's role in those torts." [133] at 5. Particularly "damning," in Raina's view, is "Lariba's knowledge that Raina was constructing a Dunkin Donuts … on the property." *Id.* But while Lariba's knowledge of the Dunkin' might relate to Lariba's own liability to SBC, Raina does not explain why Lariba's knowledge of Raina's plans made Lariba liable for torts resulting from those plans. Raina does not, in fact, articulate what Lariba's "role in those torts" would be. For example, what role could Lariba have in Raina's alleged post-sale trespass?

Raina's theory for Lariba's contribution for tortious interference is also murky. In the scenario where Raina is found liable for tortious interference, that means that a finder of fact has determined that Raina tortiously induced Lariba to breach the 2010 Agreement. But Raina does not explain what its role could have been in inducing Lariba to breach the 2010 Agreement. Instead, Raina suggests that Lariba's liability

for breach of contract against SBC creates an obligation for Lariba to also pay part of Raina's liability for inducing that breach. But it cannot be the case that Raina's success in inducing Lariba to breach a contract reduces its own liability for tortiously interfering with the same contract.

For its part, Lariba argues that it cannot be a joint tortfeasor under the Contribution Act if, as in this scenario, Raina is the only entity that has committed the tort. [95] at 3–4. Raina contends that "there is no requirement that the bases for liability among contributors be the same as long as some basis for liability to the original plaintiff exists." [133] at 6. That is true, but the statute does require that both tortfeasors be "subject to liability *in tort*." 740 ILCS 100/2(a) (emphasis added). In the scenario Raina contemplates—where Raina is liable for tortious interference and Lariba is liable for breach of contract—only one of the defendants is "subject to liability in tort." Raina's claim for contribution related to tortious interference thus fails under the plain text of the state statute, and is dismissed on that basis.

While its cross-complaint discussed good faith and fair dealing, [82] at 28–29 ¶¶ 13–18—which, as Lariba notes, is not an independent cause of action [95] at 4–5 (citing *PNC Bank, NA v. Five-Star Audiovisual, Inc.*, 21 CV 5419, (N.D. Ill. Sept. 28, 2022)—Raina now argues that it actually made its own breach of contract claim against Lariba. [133] at 8 ("Count II of Raina's Crossclaim provides the substantive allegations for a claim for Breach of Contract"). But the Court denied Raina's motion to amend its crossclaims to include a breach of contract claim in the April 17, 2025 hearing on that motion. *See* [105], [127]. In light of that denial, Raina certainly may

24

not now amend its claim via a response to another party's motion for summary judgment on the original claim.

Raina's claim of fraudulent concealment is also quick to resolve. Raina's crossclaim stated that Raina "was not expressly aware of the alleged easement on the property at the time Raina executed the Warranty Deed with Lariba." [82] at 29 ¶ 20. But there is no dispute that the easements were properly recorded, and Raina now admits that it had actual knowledge of them. [124] ¶ 27. Thus "there can be no doubt that the existence of the easement was disclosed, both through the [] title search, and in communications between the parties." [95] at 6.

The Court thus grants Lariba's motion for summary judgment regarding Raina's cross-claims [95].

## IV. Conclusion

For the foregoing reasons, SBC's motion for summary judgment against Lariba and Raina is denied. [113]. Lariba's motion for summary judgment on SBC's claims against it is granted in part and denied in part. [103]. Lariba's motion for summary judgment on Raina's crossclaims is granted. [95].

25

The parties are directed to appear at a status hearing for 10/6/25 at 9:30 a.m. At that status hearing, the Court will set pretrial deadlines and a trial date for a trial to take place in early 2026. In advance of the hearing, the parties are directed to meet and confer on potential trial dates. The parties are also directed to meet and confer on the possibility of settlement and to come to the status hearing prepared to report on that possibility as well as the parties' interest in a settlement conference.

_____
Georgia N. Alexakis
United States District Judge

Date: 9/22/25